IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMBISHA SHOSHONE TRIBE, EDWARD BEAMAN, VIRGINIA BECK, and CLEAVELAND LYLE CASEY,<br><br>                    Plaintiffs,<br><br>            vs.<br><br>JOSEPH KENNEDY, MADELINE ESTEVES, PAULINE ESTEVES, ANGELA BOLAND, and ERICK MASON,<br><br>                    Defendants.<br>_____ / | CASE NO. CV F 09-1248 LJO SMS<br><br>**ORDER ON PLAINTIFFS' MOTION TO DISMISS AND REMAND** (Doc. 51) **and DEFENDANTS' MOTION TO AMEND BY SUBSTITUTION** (Doc. 54) |

INTRODUCTION

The Court must determine whether it has federal subject matter jurisdiction over claims that, while based on state and tribal law, rely on decisions of the United States Department of Interior, Bureau of Indian Affairs ("BIA"). As set forth below, subject matter jurisdiction exists if the well-pleaded complaint establishes either: (1) federal law creates a cause of action; or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. Plaintiffs' causes of action are rooted in either state law or tribal law; none is based on a federal statute. In addition, resolution of Plaintiffs' claims depends on substantial questions of state and tribal law, not federal law. Finally, defendants fail to carry their burden to establish subject matter jurisdiction. Accordingly, and for the reasons described below, this Court DISMISSES and REMANDS this action for lack of jurisdiction.

# BACKGROUND

Plaintiffs Timbisha Shoshone Tribe ("Tribe"),[1] Edward Beaman, Virginia Beck, and Cleaveland Lyle Casey (collectively "Plaintiffs") and defendants Joseph Kennedy ("Mr. Kennedy"), Madeline Esteves, Pauline Esteves, Angela Boland, and Erick Mason (collectively "Defendants") are members of dueling factions that have contested the governance of the Tribe since 2007.[2] Plaintiffs are members of the last undisputed Tribal Council, which was elected in November 2006 ("Rollback Council"). A dispute erupted at an August 25, 2007 meeting of the Rollback Council, resulting in the emergence of two factions. Plaintiffs are members of the faction based in Bishop, California ("Bishop faction"). Defendants' faction is based in Death Valley, California ("Death Valley faction"). The Bishop and Death Valley factions have held separate elections, and run parallel and competing tribal governments, since the August 2007 Rollback Council meeting. Each faction disputes the actions and validity of the other, and both have appealed to the BIA. The BIA appeals remain pending.

Plaintiffs claim that as the "governing majority" of the Rollback Council, they control Tribal governance. Plaintiffs accuse Defendants of forming an "illegal" Tribal Council as part of a "conspiracy to violate the Constitution and the laws of the Tribe by continuing to divert" tribal funds "to bank accounts maintained with various banks." Compl. ¶2. Plaintiffs assert that Defendants' "[m]aintenence and use of these bank accounts is unlawful under the Constitution and laws of the Tribe in that the properly constituted Tribal Council of the Tribe is the only governing authority authorized to expend funding on behalf of the Tribe." *Id*. In their complaint for injunctive, declaratory, and other relief, Plaintiffs assert the following causes of action against Defendants: (1) violation of tribal law; (2) conversion; (3) fraud; (4) breach of fiduciary duty; (5) abuse of process; (6) constructive trust; (7) wrongful interference with prospective economic advantage; (8) unfair competition; (9) accounting; and (10) declaratory relief as to the rights and obligations of the parties regarding the use of Tribal funds.

---

[1] The status of the Tribe, its members, and its Tribal Council are in dispute, as explained *infra*. Accordingly, the Tribe's identity as a "plaintiff" is based on the complaint filed in this action and shall not be construed as this Court's expression of any view on the status of the Tribal Council or whether the Tribe authorized this action to be filed in its name.

[2] The battle for tribal governance has spanned more than a decade. A prior dispute in tribal leadership was resolved through arbitration in 2004. A more comprehensive background of the instant dispute is detailed in *Timbisha Shoshone Tribe v. Kennedy*, – F.Supp.2d —, 2009 WL 3615971 (E.D.Cal. 2009).

Plaintiffs initiated this action against Defendants on May 20, 2009 in the Inyo County Superior Court, Case No. SICVCV09-48418. Defendants removed the action to this Court on July 15, 2009. In the notice of removal, Defendants claim that this Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 or 28 U.S.C. §1362. Notice of Removal, ¶3. Defendants assert that "plaintiffs' claims arise under federal statutes including 28 U.S.C. §1360 ("Public Law 280"), and various administrative decisions of the United States Department of the Interior, Bureau of Indian Affairs; the False Claims Act, 31 U.S.C. §3729; and the Administrative Procedure Act, 5 U.S.C. §702, among others." *Id*. In the statement of jurisdiction, Defendants further contend that "disposition of plaintiffs' claims for relief will require resolution of substantial questions of federal law, including whether Public Law 280 conferred upon the courts of the State of California jurisdiction to resolve any or all of plaintiffs' purported causes of action." *Id*.

After Defendants filed an answer to the complaint, Plaintiffs moved for a preliminary injunction against Defendants in September 2009. In opposition to the motion, and although Defendants removed this action to federal court, Defendants questioned whether Plaintiffs had standing to raise its claims, and asserted a defense of sovereign immunity. In its Order on Plaintiffs' Preliminary Injunction Motion, this Court addressed the jurisdictional issues raised, and concluded that because "Defendants raise serious jurisdictional issues in this action which bar Plaintiffs' suit, Plaintiffs have failed to make a 'clear showing' that they are likely to succeed in this action." *Timbisha Shoshone Tribe v. Kennedy*, – F.Supp.2d —, 2009 WL 3615971, *9-13 (E.D.Cal. 2009).

On February 3, 2010, Plaintiffs moved to dismiss voluntarily this action without prejudice. Defendants objected to the dismissal. In its February 18, 2010 Order on Plaintiffs' Request to Dismiss, this Court noted that "plaintiffs acknowledge that 'both Defendants and the Court have indicated that they doubt subject matter jurisdiction exists in this matter.' Plaintiffs explain that they have 're-examined their position' and agree that subject matter jurisdiction is lacking." Dismiss Order, p. 5. "Because the parties question[ed] whether subject matter jurisdiction exists, and because a Fed. R. Civ. P. 41(a)(2) dismissal is inappropriate when subject matter jurisdiction is lacking," this Court granted Plaintiffs' request to withdraw its request for dismissal. In addition, this Court set a briefing schedule for the parties to address whether this Court had subject matter jurisdiction over Plaintiffs' claims.

Plaintiffs moved to remand this action for lack of subject matter jurisdiction on March 10, 2010. Defendants filed an incomplete opposition on March 24, 2010, and moved to amend by substitution the opposition on March 29, 2010. After briefing on the matter, this Court denied Defendants' motion to substitute by amendment but ordered supplemental briefing to address three specific questions. Order on Defendants' Motion to Amend By Substitution and Order for Additional Briefing ("Briefing Order") (Doc. 57). Defendants filed their supplemental brief on April 13, 2010. Plaintiffs filed their supplemental brief on April 20, 2010. Having considered the parties' arguments, the relevant law, and the record, this Court issues the following order.

### STANDARD OF REVIEW

Pursuant to 28 U.S.C. §1441, a defendant may remove an action filed in state court to a federal district court if the federal court "would have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States[.]" The removal statute "is strictly construed and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996) (internal quotations and citations omitted). A defendant seeking removal of an action to federal court has the burden of establishing the grounds for federal jurisdiction. *California ex rel. Lockyer v. Dynegy*, 375 F.3d 831, 838 (9th Cir. 2004).

A district court's federal-question jurisdiction extends over "only those cases in which a well-pleaded complaint establishes either the federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983) (quoted in *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09 (1988)). Thus, the "presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc., v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (internal quotations and citations omitted); *Vaden v. Discover Bank*, – U.S. –, 129 S.Ct. 1262, 1272 (2009). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law," *id*., and existence of federal jurisdiction is determined by the complaint at the time of removal. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062,

1065 (9th Cir.1979). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c).

### DISCUSSION

In the notice of removal, Defendants asserted that this Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1362.  Both statutes confer jurisdiction to federal district courts over federal questions of law.  28 U.S.C. §1331 provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Similarly, 28 U.S.C. §1362 confers to district courts "original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States." Pursuant to both of these statutes, federal jurisdiction exists over an action that "arises under the Constitution, laws, or treaties of the United States."  Accordingly, this Court has jurisdiction over Plaintiffs' claims if they are based on federal law.

On their face, Plaintiffs' claims are based on state and tribal law. Plaintiffs assert ten causes of action:  (1) violation of tribal law; (2) conversion; (3) fraud; (4) breach of fiduciary duty; (5) abuse of process; (6) constructive trust; (7) wrongful interference with prospective economic advantage; (8) unfair competition; (9) accounting; and (10) declaratory relief as to the rights and obligations of the parties regarding the use of Tribal funds.  Undisputedly, none of these claims is based on a provision of the United States Constitution, federal statute, or United States treaty.

Although Plaintiffs do not assert explicitly a federal claim, Defendants maintain that Plaintiffs' claims "arise under" federal law.  In its supplemental briefing order, this Court ordered the parties to address the following three questions to determine whether Plaintiffs' claims, rooted in state and tribal law, arise under federal law:

> (1) Does Plaintiffs' "right to relief necessarily depend on resolution of a substantial question of federal law" where, as here, each of Plaintiffs' claims relies on federal BIA decisions (and not tribal law) to establish that they constitute the Tribe's governing authority?;
> (2) What specific authority supports Defendants' position that this Court has federal subject matter jurisdiction to consider Plaintiffs' claims that, while based on state and tribal law, rely on decisions of the BIA?
> (3) Does this Court lack subject matter jurisdiction (or is subject matter jurisdiction established) where, as here, Plaintiffs' complaint seeks the following forms

5

of relief: (a) a declaration of the rights and obligations of the parties under "federal law;" (b) an injunction to prohibit Defendants from "maintaining bank accounts that are not authorized by the Constitution and Laws of the Tribe or federal law"; and (c) an "accounting of all monies Defendants diverted in violation of the Tribe's Constitution and laws, and federal law"?

Briefing Order, pp. 5-6. This Court will consider each issue below.[3]

## Plaintiffs Claims for Relief Under "Federal Laws"

Although Plaintiffs' claims are based on state and tribal law, Plaintiffs' complaint seeks the following forms of relief: (a) a declaration of the rights and obligations of the parties under "federal law;" (b) an injunction to prohibit Defendants from "maintaining bank accounts that are not authorized by the Constitution and Laws of the Tribe or federal law"; and (c) an "accounting of all monies Defendants diverted in violation of the Tribe's Constitution and laws, and federal law." In its order for supplemental briefing, this Court asked the parties to address whether subject matter jurisdiction existed based on these claims for relief which invoke federal law.

Plaintiffs respond that reference in a complaint to unspecified federal laws does not establish federal subject matter jurisdiction. In support of their position, Plaintiffs cite a number of cases including *Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 693 (5th Cir. 1995). In *Avitts*, the "only mention of federal law in...Appellee's complaint[] was the...oblique reference to Appellants' violation of unspecified federal laws. No federal cause of action ha[d] ever been asserted[.]" *Id*. at 693. On these facts, the Court ruled that "it is plain that removal jurisdiction under 28 U.S.C. §1441 simply did not exist" and that there was an "obvious lack of original jurisdiction under §1331." *Id*.; *see also, Johnson v. Griffin*, 2010 U.S. Dist. LEXIS 33281 (E.D. Cal. 2010) ("Simple reference to federal law does not create subject-matter jurisdiction. Subject-matter jurisdiction is created only by pleading a cause of action within the court's jurisdiction in the complaint, and plaintiff has not done so."). In their supplemental brief, Defendants acknowledge that Plaintiffs seek a declaration under federal law, but set forth no authority to establish that subject matter jurisdiction exists on this basis. Accordingly, Defendants fail to carry their burden to establish subject matter jurisdiction on this basis. *See Dynegy*, 375 F.3d at 838.

---

[3]This Court carefully considered all arguments, points, and authorities filed by the parties. Omission of reference to an argument shall not be construed as a failure to consider the argument.

**Plaintiffs' Claims Based on BIA Decisions**

Next, the Court asked the parties to address whether Plaintiffs' right to relief necessarily depended on the resolution of substantial questions of federal law where, as here, each of Plaintiffs' claims relies on BIA decisions to establish that they constitute the Tribe's governing authority. Defendants contend that Plaintiffs' claims rely necessarily on BIA decisions that recognize the Rollback Council as the Tribe's governing authority for government-to-government purposes. Defendants argue that Plaintiffs' claims raise a question of federal law because a court must determine whether the BIA decisions "have the force of federal law as regulations, and if so to what extent and over whom." Defendants argue that Plaintiffs are seeking to enforce the BIA decisions in this action. Defendants conclude that Plaintiffs claims, therefore, rely necessarily on federal law. Defendants cite no authority directly on point to support their arguments or conclusions.

Plaintiffs contend that this Court lacks jurisdiction notwithstanding the BIA decisions cited in their complaint as authority that they are the governing majority of the Tribe. Plaintiffs assert that the "mere presence" of a federal issue "does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm., Inc. v. Thomas*, 478 U.S. 804, 813 (1986). Where "each of [plaintiff's] state claims is supported by at least one state law theory of recovery not dependent upon the [federal law], the complaint does not state a claim 'arising under' that [federal law] for purposes of removal jurisdiction." *Duncan v. Al Stuetzle*, 76 F.3d 1480, 1490-91 (9th Cir. 1996); *Christianson v. Colt Indust. Operating Corp.*, 486 U.S. 800 (1988) (where each of plaintiff's state law claims is supported by at least one state law theory of recovery that does not depend federal law, "federal question jurisdiction is defeated."). Plaintiffs point out that in their complaint, they alleged that Defendants' actions violated the Tribe's law and constitution, and that these allegations were incorporated into each cause of action. Plaintiffs argue that rather than being central to the complaint, the BIA decisions are an alternate theory to Plaintiffs' primary claim that, under Public Law 280, tribal law violations can be remedied by stating tort causes of action created by California law.

This Court agrees that Plaintiffs' state law claims rely primarily on tribal law for resolution. As this Court noted in its Order on Plaintiffs' Preliminary Injunction Motion:

Internal matters of a tribe are generally reserved for resolution by the tribe itself, through

7

> a policy of Indian self-determination and self-government as mandated by the Indian Civil Rights Act, 25 U.S.C. §§1301-1341. Unless surrendered by the tribe, or abrogated by Congress, tribes possess an inherent and exclusive power over matters of internal tribal governance. *See Nero v. Cherokee Nation*, 892 F.2d 1457, 1463 (10th Cir. 1989). Moreover, a "tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community. *Id*. (quoting *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 72 n. 32 (1978)). Without authority, this Court will not interfere in the internal affairs of the Tribe. *See, Milam v. U.S. Dep't of Int.*, 10 Indian L. Rep. 3013, 3015 (D. D.C. 1982) (ordinarily, disputes "involving intratribal controversies based on rights allegedly assured by tribal law are not properly the concerns of the federal courts.").

*Timbisha*, – F.Supp.2d.– , 2009 WL 3615971, *11. Because Plaintiffs' complaint contains allegations based on tribal law to support the state law claims, the BIA decisions are an independent, alternate theory. Thus, Plaintiffs' claims do not "arise under" federal law.

Moreover, Plaintiffs correctly point out that "if a federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a substantial federal question." *Utley v. Varian Assocs., Inc.*, 811 F.2d 1279, 1283 (9th Cir. 1987); *Williams v. United Airlines*, 500 F.3d 1019, 1024 (9th Cir. 2007). While federal regulations provide an administrative remedy against the BIA, they do not contain a remedy or private right of action for aggrieved tribal officials against other members of the Tribe. *See*, 25 C.F.R. Part 2, 2.1 et seq. As Plaintiffs note, none of the federal statutes authorizes a private right of action in favor of one faction of a tribe against another for violation of BIA decisions or administrative remedies. *See, Lower Brule Sioux Tribe v. Deer*, 911 F.Supp.395, 401 (Dist. S.D. 1995) (Tribe had no private right of action for violation of executive memorandum). Although Defendants repeatedly argue that Plaintiffs seek to enforce the BIA decisions in this action, they do not establish that Plaintiffs have a private right of action to do so. Without a private right of action, Plaintiffs' state law action based on violations of the BIA decisions do not raise a substantial question of federal law.

### Specific Federal Law Conferring Jurisdiction

In response to this Court's request to identify specific federal authority to support its position that subject matter jurisdiction exists, Defendants claim that a number of statutes confer jurisdiction in this matter, including the Clean Water Act, 33 U.S.C. §1377, the Federal Grants and Cooperative Agreements Act, 31 U.S.C. §6300, and the Indian Self-Determination, Education and Assistance Act, 25 U.S.C. §450 et seq. The complaint cites none of those statutes, however, to state a claim. The

relationship between the facts alleged in the complaint and those federal statutes, if any, is too far removed. "Whether the complaint states a claim 'arising under' federal law must be 'ascertained by the legal construction of [the plaintiff's] allegations, and not by the effect attributed to those allegations by the adverse party." *Ultramar America, Ltd. v. Dwelle*, 900 F.2d 1412, 1414 (9th Cir. 1990). Accordingly, Defendants list of inapplicable federal statutes does not establish federal subject matter jurisdiction.

In their notice of removal and in opposition to this motion, Defendants contend that this Court has jurisdiction over Plaintiffs' claims pursuant to Public Law 280. Plaintiffs concede that their primary claim is that under Public Law 280, tribal law violations can be remedied by stating tort causes of action created by California law in a state court. Thus, Plaintiffs argue that a federal law confers jurisdiction on a state court to decide questions of tribal law.

In 1957, the United States Congress passed Public Law 83-280, codified as amended at 18 U.S.C. §1162, 25 U.S.C. §§1321-26, and 28 U.S.C. §1360. Public Law 280, as the legislation is collectively known, delegates certain states (including California) jurisdiction over most crimes and many civil matters throughout most of the Indian country within their borders. Pursuant to 28 U.S.C. §1360(a), California:

> shall have jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in [California] to the same extent that such State has jurisdiction over other civil causes of action, and those civil laws of such State that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State.

Pursuant to 28 U.S.C. §1360(c):

> Any tribal ordinance or custom heretofore or hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section.

According to the language and history of the statute, Public Law 280 "grant[s] jurisdiction over private civil litigation involving reservation Indians in state court." *Bryan v. Itasca County*, 426 U.S. 373, 383, 385 (1976). "[A]s to such private disputes, Public Law 280 provides not only for state court forum but also for application of state substantive law unless tribal law could be applied consistently with state law." *Id*.

In passing Public Law 280, Congress "relinquish[ed]" federal jurisdiction over some criminal and civil disputes "in favor of the states." *Anderson v. Gladden*, 293 F.2d 463, 468 (9th Cir. 1961). "The power over Indians was deemed not so inherently or exclusively federal as to apply beyond the extent to which the federal government has preempted the field, and the federal government could thus withdraw from the field and turn the subject matter back to the states when it chose to do so." *Id*. Thus, Congress did not confer jurisdiction on the state, but merely abandoned the field.

The instant action falls squarely within Public Law 280's purpose and statement of jurisdiction. The primary purpose of the relevant portion of Public Law 280 "was to grant jurisdiction over private civil litigation involving reservation Indians in state court." *Bryan*, 426 U.S. at 385. In addition, Public Law 280 "seems to have been primarily intended to redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens, by permitting the courts of the States to decide such disputes[.]" *Id.* Because the Tribe does not have a separate judicial branch, Public Law 280 allows tribal members to use the state court forum to resolve private civil disputes under state law. *See County of Inyo v. Jeff*, 277 Cal. Rptr. 841, 843 n. 4 (Ct. App. 1991) (noting the Bishop Paiute/Shoshone Tribe did not have a forum with jurisdiction over the dispute); *Doe v. Mann*, 415 F.3d 1038, 1058-59 (9th Cir. 2005) (common "theme" in the Supreme Court's Public Law 280 decisions addressing the statutes's civil jurisdiction component was "the private nature of the disputes."). In addition, Public Law 280 preserves a significant role for tribal governments in matters of local concern. *See, Bryan*, 426 U.S. at 389 n. 14.

Public Law 280 requires this Court to remand this action to Inyo County. This action is a dispute between reservation Native Americans, based on state and tribal law. Congress has abandoned federal jurisdiction in these areas. To the extent that Defendants question the scope of the state court's jurisdiction over Plaintiffs' claims, "it is the state courts, not the federal courts, that must decide in the first instance whether the states have jurisdiction over a given case." *Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1401-02 (9th Cir. 1988); *see also, Lamere v. Sup. Ct.*, 131 Cal. App. 4th 1059 (2005) (considering scope of state jurisdiction under Public Law 280); *Ackerman v. Edwards*, 121 Cal. App. 4th 946 (2004) (same). Additionally, to the extent that there is "any doubt as to the right of removal in the first instance," this Court strictly construes the statute in favor of remand. *Duncan,* 76

F.3d at 1485.

**ORDER**

For the foregoing reasons, this Court GRANTS Plaintiffs' motion to remand and REMANDS this action to Inyo County Superior Court. The clerk of court is DIRECTED to remand and close this action.

IT IS SO ORDERED.

**Dated:  April 23, 2010**              /s/ Lawrence J. O'Neill
                                     UNITED STATES DISTRICT JUDGE